**DISTRICT COURT OF MARYLAND FOR**

LOCATED AT (COURT ADDRESS)

~~22~~ ~~Southlake Square~~
~~Rockville, MD~~

COMPLAINT ☐ $5,000 or under ☐ over $5,000 ☑ over $10,000

Clerk: Please docket this case in an action of ☑ contract ☑ tort
☑ replevin ☐ detinue ☐ bad faith insurance claim

The particulars of this case are:

Home was wrongfully foreclosed upon.

**CASE NO.**

CV

**PARTIES**

**Plaintiff**

Yun Jin Hoffman
7118 Intrepid Lane
Gaithersburg, MD 20879

**VS.**

**Defendant(s):**

1. CHASE BANK
   3415 VISION DRIVE
   COLUMBUS, OH 43219

   Serve by: ☑ Certified Mail ☐ Private Process ☐ Constable ☐ Sheriff

2. M&T BANK
   ONE M&T Plaza
   Buffalo, NY 14203

   Serve by: ☑ Certified Mail ☐ Private Process ☐ Constable ☐ Sheriff

3. Wayne T. Prem
   110 West Rd, #435
   Towson, MD 21204

   Serve by: ☑ Certified Mail ☐ Private Process ☐ Constable ☐ Sheriff

4. Presidential Title Co
   4800 Hampden Lane #7
   Bethesda, MD 20814

   Serve by: ☑ Certified Mail ☐ Private Process ☐ Constable ☐ Sheriff

(See Continuation Sheet)

☐ Legal
☐ Contractual _____ %

The Plaintiff claims:

☑ $ 10,000 plus interest of $ _____ and attorney's fees of $ _____ plus court costs.

☐ Return of the property and damages of $ _____ for its detention in an action of replevin.

☐ Return of the property, or its value, plus damages of $ _____ for its detention in action of detinue.

☐ Other: _____
and demands judgment for relief.

_Signature of Plaintiff/Attorney/Attorney Code_

Telephone Number: 443 889 4611

**ATTORNEYS**

For Plaintiff - Name, Address, Telephone Number & Code

S. Shiva Arati, Esq
132 Maiden Choice Lane
Catonsville, MD 21228

## APPLICATION AND AFFIDAVIT IN SUPPORT OF JUDGMENT

Attached hereto are the indicated documents which contain sufficient detail as to liability and damage to apprise the Defendant clearly of the claim against the Defendant, including the amount of any interest claimed.

☐ Properly authenticated copy of any note, security agreement upon which claim is based ☐ Itemized statement of account ☐ Interest worksheet
☐ Vouchers ☐ Check ☐ Other written document ☐ _____ ☐ Verified itemized repair bill or estimate
I HEREBY CERTIFY: That I am the ☑ Plaintiff ☐ _____ of the Plaintiff herein and am competent to testify to the matters stated in this complaint, which are made on my personal knowledge; that there is justly due and owing by the Defendant to the Plaintiff the sum set forth in the Complaint.
I solemnly affirm under the penalties of perjury and upon personal knowledge that the contents of the above Complaint are true and I am competent to testify to these matters. ☐ Defendant _____ is in the military service.
Name
☑ No Defendant is in the military service and the facts supporting this statement are: _____
These defendants are businesses.
Specific facts must be given for the Court to conclude that each Defendant who is a natural person is not in the military.

☐ I am unable to determine whether or not any Defendant is in military service.

_____
Date

_Signature of Affiant_

EXHIBIT

B-1

DC/CV 1 (front) (Rev. 11/2010) Print Date 1/2011

## NOTICE TO DEFENDANT BEFORE TRIAL

If you agree that you owe the amount claimed, it may not be necessary for you to come to Court. Contact the Plaintiff if you wish to make payment. If you are appearing in court on the trial date, bring letters, receipts, and contracts which may help you. If you need a witness, contact the Clerk's office about a summons to the witness.

## NOTICE IF JUDGMENT IS ENTERED

If the Court awards judgment in this case to the Plaintiff, you as the Judgment Debtor, may do several things before submitting payment to satisfy the judgment. One is to appeal the decision to the circuit court sitting in that District. This is what's involved in an APPEAL of a District Court judgment—

1. 30 DAYS—You would have 30 days from the day of an adverse judgment within which to note your appeal at the District Court and there pay the higher court's filing fee. If you qualify as indigent, you may at that time petition the District Court to waive the collection of this fee.
2. TRANSCRIPT COSTS—If the amount which you were sued was $5,000 or less (not counting interest or attorney's fees), the circuit court would hear your appeal as an entirely new case from start to finish. Therefore, no transcripts from the District Court trial would be necessary. If, however, this amount should exceed $5,000, the higher court would hear your appeal on the record of what transpired in the District Court. That appeal requires a transcript of the District Court trial record. For information and costs to obtain a transcript refer to the Transcripts and Recordings brochure DCA 27 available at the clerk's office.

Another option after an adverse judgment is to file a MOTION FOR A NEW TRIAL.
1. 10 DAYS—You have 10 days from day of judgment to do this.
2. GRANT/DENY—If the Court grants your motion, you will receive a summons to a new trial.

The last options are to file MOTIONS to change the JUDGMENT.
1. 10 DAYS for ALTERING or AMENDING the judgment.
2. 30 DAYS for REVISING the judgment.

If you would not want to move on any of these options, then you should make all possible arrangements with the Plaintiff or the Plaintiff's attorney to pay the judgment amount. Should you not do this, the Plaintiff could request the Court's enforcement powers. These enforcement procedures include—
1. INTERROGATORIES—This is an attempt to locate any assets you may have. This requires written answers.
2. ORAL EXAMINATION—Another attempt to locate any assets you may have. This requires your appearing in court to answer questions. The Court backs up these plaintiff attempts at discovery by bringing its contempt powers to bear on an unresponsive defendant. More stringent enforcements you should know about include—
3. WRIT OF EXECUTION—Such a writ could order the levying or seizure and sale of any of your goods. And you, in such a circumstance, would bear the expenses of the seizure (e.g. towing, moving, storage fees, auctioneer's fees, advertising costs). Some of your goods are, by their nature, exempt from such action—
   (a) Wearing apparel, books, tools, instruments, or appliances necessary for the practice of any trade or profession, except those kept for sale, lease, or barter, in an amount not to exceed $5,000 in value.
   (b) Money payable in the event of sickness, accident, injury, or death of any person, including compensation for loss of future earnings. This exemption includes but is not limited to money payable on account of judgments, arbitrations, compromises, insurance benefits, compensation and relief. Disability income benefits are not exempt if the judgment is for necessities contracted for after the disability occurred.
   (c) Professionally prescribed health aids for you or any of your dependents.
   (d) Your interest, not to exceed $1,000 in value, in household furnishings, household goods, wearing apparel, appliances, books, animals kept as pets, and other items that are held primarily for personal, family or household use by you or your dependents.
   (e) Cash or property of any kind equivalent in value to $6,000, if within 30 days from the date of the attachment or levy you elect to exempt cash or selected items of property in an amount not to exceed a cumulative value of $6,000.
   (f) Money payable or paid in accordance with an agreement or court order for child support.
   (g) Money payable or paid in accordance with an agreement or court order for alimony to the same extent that wages are exempt from attachment under § 15-601.1(b)(1)(ii) or (2)(i) of the Commercial Law Article.
   (h) The debtor's beneficial interest in any trust property that is immune from the claims of the debtor's creditors under § 14-113 of the Estates and Trusts Article.
   (i) With respect to claims by a separate creditor of a husband or wife, trust property that is immune from the claims of the separate creditors of the husband or wife under § 14-113 of the Estates and Trusts Article.
4. GARNISHMENT OF PROPERTY—Such a writ, attaching certain assets of yours in the hands of someone else, would order that other party (e.g. bank holding your account, agent) to hold the asset subject to further court proceedings.
5. GARNISHMENT OF WAGES—Such a writ would order your employer to begin withholding from your wages the amount left over after deducting what is lawfully required and after exempting money that may not be garnished.
   Exemptions from garnishment—
   (1) the greater of: (a) 75 percent of the disposable wages due; OR (b) 30 times the federal minimum hourly wages under the Fair Labor Standards Act in effect at the time the wages are due; AND (2) any medical insurance payment deducted from an employee's wages by the employer. Other federal exemptions may be available. Disposable wages means the part of wages that remain after deduction of any amount required to be withheld by law. Finally, should you become the Judgment Debtor you should know that judgment is public information and anyone may request a copy of it.
   To Plaintiff: If the Court enters a judgment for a sum certain, you have a right to obtain a lien on real property.

## IN THE DISTRICT COURT OF MARYLAND
### Rockville Division

| | | |
|---|---|---|
| Yun-Juin Hoffman<br>7118 Intrepid Lane<br>Gaithersburg, MD 20879<br>             Plaintiff, | )<br>)<br>)<br>)<br>) | CIVIL ACTION NO.: _____ |
| vs. | )<br>) | |
| CHASE BANK<br>3415 Vision Drive<br>Columbus, OH 43219 | )<br>)<br>)<br>) | JURY DEMAND ENDORSED HEREON |
| M&T Bank<br>One M & T Plaza<br>Buffalo, NY 14203 | )<br>)<br>)<br>) | |
| WAYNE T. PREM<br>110 West Road, Suite 435<br>Towson, MD 21204 | )<br>)<br>)<br>) | |
| Presidential Title Co.<br>4800 Hampden Lane, #7<br>Bethesda, MD 20814-2930 | )<br>)<br>)<br>) | |
| MERS<br>1818 Library Street<br>Ste. 300<br>Reston, VA 20190 | )<br>)<br>)<br>)<br>) | |
|            Defendants. | )<br>) | |

## COMPLAINT – ACTION INVOLVING REAL PROPERTY

NOW COMES Plaintiff, Yun-Juin Hoffman, (herein after "Plaintiff") by and through her

attorney, S. Shiva Arati, and files this Complaint for Wrongful Foreclosure, Predatory Lending,

Breach of Contract, Gross Negligence, Intentional Violation of the Duty of Good Faith, Abuse of

Process/Malicious Prosecution, Wrongful Foreclosure for Failing to Adhere to Power of Sale

Notice Requirements, Violations of the Truth in Lending Act, Violations of the Real Estate and

Settlement Procedures Act, Conspiracy to Commit Mortgage Fraud, Fraud, Fraudulent

Concealment, Fraudulent Misrepresentation, Negligent Misrepresentation, Civil Rico, Civil

Conspiracy to Commit Mail Fraud, and Civil Conspiracy to Commit Wire Fraud.

## JURISDICTION AND VENUE

1.   The United States District Court for Maryland has jurisdiction under 28 U.S.C. §1331.

     Venue is appropriate in this District under 28 U.S.C. § 1391(b)(1), (b)(2), and (c).

2.   All of Defendants do business in or derive substantial revenue from activities carried out

     in Maryland.

3.   All Defendants are licensed to do business in Maryland.

4.   Almost all activity pertaining to the matters in this case occurred in Maryland.

5.   On information and belief, all Defendants engaged in significant business activity in the

     State of Maryland as it pertains to selling mortgage loans to consumers.

## THE PARTIES

6.   On April 25, 2005, Plaintiff refinanced the property located at 7118 Intrepid Lane,

     Gaithersburg, MD  20879.

7.   Defendant Chase Bank, LLC, (hereinafter "Defendant Chase") was the mortgage lender

     for the real estate transaction and has a primary business location in New York, NY.

8.   Defendant M&T Bank (hereinafter "Defendant M&T") is a subsequent assignee and/or

     successor to Defendants Chase and MERS and has a primary business location in

     Baltimore, MD.

9.   Defendant Wayne T. Prem, (hereinafter "Defendant Prem") is the Substitute Trustee with

     a primary business location in Towson, Maryland.

10.   Defendant, Mortgage Electronic Registration Systems, (herein after "Defendant MERS") was the original beneficiary and nominee with a primary business location in Reston, VA.

## FACTUAL ALLEGATIONS

11.   The borrower under the Deed of Trust was designated as Plaintiff, Yun-Juin Hoffman.

12.   Under the Deed of Trust, the original beneficiary and nominee were designated as Defendant MERS.

13.   On [INSERT DATE], MERS assigned its rights under the Deed of Trust to Defendant M&T Bank.

14.   The lender under both the Deed of Trust and the Note was Defendant Chase Bank.

15.   The original Note stated that the borrower owed to Defendant Chase the sum of $450,000.00, at an adjustable rate of interest that started at 5.875%.

16.   Under Paragraph 4 of the Note, the interest rate was set to adjust on a date after the inception of the loan.

17.   This adjustment was set to occur 6 years after Plaintiff purchased the property.

18.   Upon information and belief, Defendant Chase pre-sold the Plaintiff' mortgage to M&T Bank while the property was in the midst of bankruptcy proceedings, in direct violation of the then-existing court order.

19.   Even before the time of the closing, Defendant M&T Bank was the ultimate recipient of the Plaintiff's mortgage.

20.   During the time period between closing and Defendant M&T Bank's assumption of the mortgage, Defendant Chase acted as the loan holder.

21. Defendant M&T Bank paid fees to Defendant Chase in its capacity as the loan originator, for acting as the loan holder.

22. This fee arrangement was not disclosed to Plaintiff.

23. The Plaintiff received no benefit from this undisclosed financial arrangement between Defendant Chase and Defendant M&T Bank.

24. At some point in 2010, Plaintiff fell behind in her mortgage payments.  She subsequently received a Notice of Default from her lender.

25. Plaintiff received an intent to foreclosure notice from Defendant Chase.

26. The Deed of Trust contains at Paragraph 22 a clause named "Acceleration; Remedies." This clause states that upon the Borrower's breach of any term of the Deed of Trust, the Lender must send to the Borrower a notice prior to acceleration ("pre-acceleration notice").

27. This clause also stated the form in which the notices were to be sent.

28. Defendant Chase never sent any such notice to Plaintiff.

29. Defendant M&T Bank never sent any such notice to Plaintiff.

30. Plaintiff never received any such notice.

31. Paragraph 22 also called for a notice to be sent to the Borrower in the event that the Lender elected to accelerate the amounts due under the Note.

32. Defendant Chase never sent any such notice to Plaintiff.

33. Defendant M&T Bank never sent any such notice to Plaintiff.

34. Additionally, Defendant M&T Bank put Plaintiff under the impression that it had accepted a modification agreement, only to have the Defendant M&T Bank cash the check sent to Defendant returned weeks later with the explanation that a computer error

occurred.

35. Plaintiff never received any such notice.

36. Defendant Wayne T. Prem was appointed Substitute Trustee.

## COUNT I – BREACH OF CONTRACT

37. Plaintiff incorporate fully the allegations in paragraphs 1 through 34 as if fully set out and incorporated by reference herein.

38. Plaintiff' Deed of Trust is a binding contract to which all Defendants are a party.

39. Defendants Chase and M&T Bank failed to provide the Pre-Acceleration Notice under the Deed of Trust.

40. These failures constitute breaches of the Deed of Trust.

41. The willful and wanton failures to abide by the Deed of Trust necessitates the filing of this lawsuit.

## COUNT II – GROSS NEGLIGENCE

42. Plaintiff incorporate fully the allegations in paragraphs 1 through 39 as if fully set out and incorporated by reference herein.

43. In carrying out the obligations under the Deed of Trust, Defendants Wayne T. Prem, MERS, Chase and M&T Bank owed Plaintiff a duty to act in good faith and fair dealings at all times.

44. Defendants Chase and M&T Bank knew of their obligations to provide a Pre-Acceleration Notice to Plaintiff.

45. Defendants Wayne T. Prem, MERS, Chase and M&T Bank knew of their obligations pursuant to Paragraph 22 of the Deed of Trust.

46. The purported assignments conducted were void on the grounds that no authority to sign affidavits on behalf of Defendants MERS and Chase was ever made

47. As the assignments conducted were invalid, the foreclosure is invalid.

48. Defendants Wayne T. Prem, MERS, Chase and M&T Bank intentionally failed to perform their duties to act in good faith and fair dealings.

49. This willful, wanton and intentional failure was made with reckless disregard of Plaintiff's property.

## COUNT III – INTENTIONAL VIOLATION
## OF THE DUTY OF GOOD FAITH

50. Plaintiff realleges each allegation above as if fully set forth herein.

51. Defendants CHASE, Wayne T. Prem, MERS and M&T Bank had obligations to carry out their duties under the Deed of Trust in good faith and to deal fairly with Plaintiff.

52. The purported assignments conducted by Chase to M&T Bank were void on the grounds that they had no authority to sign affidavits on behalf of Defendants MERS and Chase

53. As the assignments conducted by the substitute trustee were invalid, therefore any activity to attempt to begin the foreclosure process is invalid.

## COUNT IV – VIOLATIONS OF THE TRUTH IN LENDING ACT

54. Plaintiff realleges each allegation above as if fully set forth herein.

55. In violation of the Truth In Lending Act, (herein after "TILA") Defendant Chase extended credit to Plaintiff without regard for her ability to repay the loan.

56. Defendant Chase acted in concert with Defendant M&T Bank to extend this credit.

57. Defendant Chase acted without regard to Plaintiff' repayment ability.

58. Defendant Chase overstated the assets, income, collateral, or other financial information in order to qualify Plaintiff for the adjustable rate mortgage in the amount of $450,000.00.

59. Defendant Chase was aware of this overstatement.

60. Defendant M&T Bank concealed this overstatement from the Defendant.

61. Defendant Chase failed to disclose certain finance charges on the HUD-1 statement that were to be imposed as a part of the extension of credit in the form of the mortgage and/or failed to explain how those charges were to be determined.

62. Neither Defendant Chase nor Defendant M&T Bank disclosed the payments made to and received by Defendant Chase for its pre-selling and holding the mortgage for Defendant M&T Bank.

63. This fee arrangement was paid in the form of an unlawful yield spread premium, undisclosed to the borrower, but paid for by Plaintiff in the form of higher payments or interest over the life of the loan.

64. Defendants Chase and M&T Bank concealed these facts from the Plaintiff.

65. This concealment prevented the Plaintiff from readily discovering the undisclosed acts.

66. The Plaintiff was duly diligent in ascertaining these violations.

67. Defendants Chase and M&T Bank did not provide a good faith estimate, loan commitment, or interest-only disclosure statements to Plaintiff Hoffman.

68.   The loan documents only show an interest rate on the loan of 5.875% with a monthly payment of $2,962.89.

69.   The actual amortizing payment amount is never mentioned in the mortgage loan documents.

### COUNT V – VIOLATIONS OF THE
### REAL ESTATE AND SETTLEMENT PROCEDURES ACT

70.   Plaintiff realleges each allegation above as if fully set forth herein.

71.   Defendant Chase failed to provide a Good Faith Estimate in the time and manner as required by the Real Estate and Settlement Procedures Act (herein after "RESPA").

72.   Defendant Chase used a stated income product for loan approval based on the value of the collateral used as the security for the loan.  Such credits experience a significantly higher rate of foreclosure than more traditional means of stating income.

73.   Defendant Chases' conduct as holding the pre-sold loan for Defendant M&T amounts to acting as a straw man for which the borrower received no value.

74.   Defendants' misconduct was concealed from Plaintiff, which prevented them from readily discovering the misconduct, which they were duly diligent in attempting to ascertain.

75.   Defendant Chase did not inform Plaintiff Hoffman of their intention to transfer the servicing of the mortgage.

76.   Defendant Chase required deposit of funds in escrow in excess of the statutorily permitted amounts.

### COUNTS VI, VII, VIII, IX – FRAUD, FRAUDULENT CONCEALMENT,
### FRAUDULENT MISREPRESENTATION, NEGLIGENT MISREPRESENTATION

77.   Plaintiff realleges each allegation above as if fully set forth herein.

78. During the time of the closing, Defendant Chase misrepresented to Plaintiff :(a) the fees that Defendant Chase was paid by Defendant M&T; (b) that their loan was pre-sold to Defendant M&T; and (c) that the price of their loan was based on an inflated appraisal report.

79. Defendant Chase made these misrepresentations knowing they were false, with the purpose of inducing Plaintiff to obtain credit from Defendant Chase.

80. Defendant Chase had an obligation to disclose the truth.

81. Plaintiff relied on these misrepresentations and had the right to do so.

## COUNT X – CONSPIRACY TO COMMIT MORTGAGE FRAUD

82. Plaintiff realleges each allegation above as if fully set forth herein.

83. Defendant M&T Bank conspired with Defendant Chase to carry out the acts described in Counts X through XIII.

84. Defendant Chase communicated, consulted, and cooperated with Defendant M&T Bank in carrying out the acts described in Counts X through XIII.

85. These communications, consultations, and cooperation took place at the time when Defendant Chase negotiated the sale of Plaintiff' mortgage to Defendant M&T.

86. At all times pertinent to these allegations, Defendant Chase intended (1) to enter the conspiracy with Defendant M&T Bank and (2) that Defendant M&T Bank would carry out as a co-conspirator the acts described in Counts X through XIII.

87. Plaintiff were injured by the conspiracy in that they were denied the opportunity to find cheaper credit, that they were sold and made payments under a predatory loan, and that such fraud and predatory lending practices were the proximate cause of their financial injuries.

## COUNTS XI, XII, XIII – CIVIL RICO, CIVIL CONSPIRACY TO COMMIT MAIL FRAUD, AND CIVIL CONSPIRACY TO COMMIT WIRE FRAUD

88.    Plaintiff realleges each allegation above as if fully set forth herein.

89.    Defendants Chase and M&T Bank engaged in a mortgage lending enterprise to undertake the conduct described in Counts X through XIV.

90.    In furtherance of these acts, Defendants Chase and M&T Bank used the interstate mail and wire system to communicate with one another and to Plaintiff.

91.    Defendants undertook such acts for their own pecuniary gain to the detriment of Plaintiff as described in Counts X through XIV.

92.    As set forth in Count VIII, Defendants Chase and M&T Bank concealed these acts from Plaintiff, which prevented them from discovering said acts, despite their diligence in attempting to ascertain the truth.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff demand judgment against Defendants for the following relief:

A.    An injunction preventing Defendant Chase from selling the property at a foreclosure sale or any other sale pending the resolution of the matters raised in this Complaint;

B.    Damages to Plaintiff resulting from the breach of contract as a remedy at law;

C.    Compensation to Plaintiff for Defendants' Gross Negligence, violations of the Duty of Good Faith and Fair Dealing, Abuse of Process and/or Malicious Prosecution, Fraud, Fraudulent Concealment, Fraudulent Misrepresentation, Negligent Misrepresentation, Conspiracy to Commit Mortgage Fraud, Civil RICO, Civil Conspiracy to Commit Wire Fraud, and Civil Conspiracy to Commit Mail Fraud in an amount to be determined at trial;

D.    Punitive damages against Defendants Chase and M&T Bank Mortgage in an amount to be determined at trial;

E.    Statutory damages for violations of the Truth In Lending Act and the Real Estate and

Settlement Procedures Act in an amount to be determined at trial; and

F.    Compensation to Plaintiff for attorney fees, court costs, and such other relief, in an

amount to be determined at trial, and as this Court may deem appropriate.

Respectfully submitted,

/s/ S. Shiva Arati

S. Shiva Arati, Esquire
132 Maiden Choice Lane
Catonsville, MD  21228

Strike Demand
at amount in
controversy is less
than $75,000
6/9-11

JURY DEMAND

Plaintiff request a trial by jury with respect to all matters and issues properly triable by a jury.

                                    Respectfully submitted,

DATED:  5·17·11

                                    S. Shiva Arati, Esq.
                                    Attorney for Plaintiff

VERIFICATION

I, Yun-Juin Hoffman, do hereby state and verify that all of the above-mentioned statements are
true to the best of my knowledge and ability.

                                    Respectfully submitted,

                                    Yun-Juin Hoffman, Plaintiff

11

**BankofAmerica**                                    Online Banking

REDACTED

Balance Summary

**$596.26**  Available Balance as of today

**View:**  Today(February 4, 2011)

All transactions:

| Date ↓ | Description | Type | Status | Amount | Available Balance |
|---|---|---|---|---|---|
| | **Amount included in Available Balance** | | | | |
| Processing | estates at pope farm BILL PAYMENT | | [P] | -$55.00 | $596.26 |
| 02/03/2011 | Fidelity Investments Bill Payment | | [c] | -$1,000.00 | $651.26 |
| 02/02/2011 | Comcast Cable Communications Bill Payment | | [c] | -$90.00 | $1,651.26 |
| 02/02/2011 | AT&T Mobility Bill Payment | | [c] | -$200.00 | $1,741.26 |
| 02/02/2011 | Pepco (Potomac Electric Power) Bill Payment | | [c] | -$300.00 | $1,941.26 |
| 02/02/2011 | volkswagon Fin. Svc. Bill Payment | | [c] | -$363.52 | $2,241.26 |
| 02/02/2011 | M&T Bank Bill Payment | | [c] | -$500.00 | $2,604.78 |
| 01/31/2011 | CHECKCARD 0130 7-ELEVEN 23693 DERWOOD MD 24289101030006504463444 | | [c] | -$39.88 | $3,104.78 |
| 01/31/2011 | Check 202: Edit Details | | [c] | -$141.00 | $3,144.66 |
| 01/31/2011 | GREEN RIDGE DES:GR2 PAY ID:11 INDN:YUN-JUIN HOFFMAN CO ID:2705 | | [c] | $690.17 | $3,285.66 |
| 01/28/2011 | OM FINANCIAL DES:INSUR PREM ID:P 8601138793 INDN:HOFFMAN, YUN-JUIN CO ID:1526 | | [c] | -$12.63 | $2,595.49 |
| 01/28/2011 | Check 203: Edit Details | | [c] | -$135.00 | $2,608.12 |
| 01/28/2011 | Check 201: Edit Details | | [c] | -$150.00 | $2,743.12 |
| 01/28/2011 | BILL PAY CHECK 5114: M&T Bank | | [c] | -$7,489.57 | $2,893.12 |
| 01/27/2011 | CHECKCARD 0125 MONTGOMERY COLLEGE BKST ROCKVILLE MD 24755421026640250364565 | | [c] | -$209.35 | $10,382.69 |
| 01/26/2011 | ALBERT & AUSTEIN DES:PAYROLL ID:38640990007910X INDN:HOFFMAN, YUN-JUIN CO ID:9000 | | [c] | $871.61 | $10,592.04 |
| 01/25/2011 | CHECKCARD 0123 LOTTE PLAZA GERMANTOWN MD 24122581024980012743156 | | [c] | -$43.72 | $9,720.43 |
| 01/25/2011 | CITI Bill Payment | | [c] | -$200.00 | $9,764.15 |

02/05/2011  08:27  3017747648        ALBERT&AUSTEIN                    PAGE  01

**M&T Bank**

P.O. Box 767, Buffalo, N.Y. 14240-0767

*2/1/11 9:26 Called.*
*Tel= 410-337-8577*

January  25, 2011

STEVE H HOFFMAN
YUN-JUIN HOFFMAN
7118 INTREPID LN
GAITHERSBURG MD 20879-5418

| | |
|---|---|
| Line of Credit Account # ~~REDACTED~~ | |
| Next Due Date | 02/09/11 |
| Total Amount Due | $7,913.80 |
| Late Fee | $25.00 |

We're writing to you today regarding the M&T account referenced above. As of
January  25, 2011, we have not received your payment. Therefore, a late fee
has been charged to your account.

To bring this account to good standing, please make your payment at any M&T
branch or mail it to:

M&T Bank
PO Box 62146
Baltimore, MD 21264-2146

Please remember to include your account number with your payment. If you have
recently sent your payment, we thank you for your prompt response.

We may report information about your account to the three major credit-
reporting agencies. Late payments, missed payments, or other defaults on your
account may be reflected in your credit report.

If you are unable to make this payment or have additional questions, please
call us at 1-800-724-2525 or visit our Consumer Payment Assistance Website at
www.mtbpay.com for other payment options.

Thank you for banking with M&T.

If you have a Home Equity Line of Credit Account - The lender retains a security interest in
your real property.

Notice to Utah residents: As required by Utah law, you are hereby notified that a negative
credit report reflecting on your credit record may be submitted to a credit reporting agency
if you fail to fulfill the terms of your credit obligation.

Notice to Kansas residents: The Credit Account Protector insurance policy which covers your
account will be cancelled if your account becomes 90 days past due.

L725 (10-04)

02/05/2011  07:36    3017747648        ALBERT&AUSTEIN                        PAGE  01

# M&T Bank

P.O. Box 767, Buffalo, N.Y. 14240-0767

December  24, 2010

STEVE H HOFFMAN
YUN-JUIN HOFFMAN
7118 INTREPID LN
GAITHERSBURG MD 20879-5418

BZYGL-XX14HB



Line of Credit Account #   REDACTED
Next Due Date              01/09/11
Total Amount Due           $7,489.57
Late Fee                   $25.00

We're writing to you today regarding the M&T account referenced above. As of December  24, 2010, we have not received your payment. Therefore, a late fee has been charged to your account.

To bring this account to good standing, please make your payment at any M&T branch or mail it to:

M&T Bank
PO Box 62146
Baltimore, MD 21264-2146

Please remember to include your account number with your payment. If you have recently sent your payment, we thank you for your prompt response.

We may report information about your account to the three major credit-reporting agencies. Late payments, missed payments, or other defaults on your account may be reflected in your credit report.

If you are unable to make this payment or have additional questions, please call us at 1-800-724-2525 or visit our Consumer Payment Assistance Website at www.mtbpay.com for other payment options.

Thank you for banking with M&T.

If you have a Home Equity Line of Credit Account - The lender retains a security interest in your real property.

Notice to Utah residents: As required by Utah law, you are hereby notified that a negative credit report reflecting on your credit record may be submitted to a credit reporting agency if you fail to fulfill the terms of your credit obligation.

Notice to Kansas residents: The Credit Account Protector insurance policy which covers your account will be cancelled if your account becomes 90 days past due.

**Forensic Loan Audit**



# REAL RECOURSE SOLUTIONS

Forensic Loan Audit Report
Prepared For:

Steve and Yun-Jin Hoffman
7118 Intrepid Ln
Gaithersburg, MD 20879

**Forensic Loan Audit**

## Table of Contents

| | | |
|---|---|---|
| Cover Letter | Page | 3 |
| Brief Description of Forensic Report | Page | 4 |
| Loan Summary | Page | 5 |
| Truth in Lending Analysis | Page | 6 |
| Summary Findings | Page | 7-11 |
| Fraud Stats | Page | 12 |
| RESPA Chart | Page | 13 |
| Federal & State Regulations | Page | 14-21 |

The information contained in this document, including any source links related information, is not to be constructed as legal advice or a substitute for legal advice and is offered to the recipient for educational purposes only. Real Recourse Solutions is a loan audit/mortgage due diligence firm providing research assistance and information to attorneys. This audit/analysis is based on the closing documents provided for review. The explanations listed herein are not to be constructed as an exhaustive list of violations and discrepancies that may arise from this loan. Other violations may often be uncovered through discovery as well. Real Recourse Solutions is not a law firm and does not offer legal advice.

**Forensic Loan Audit**

To Whom It May Concern:

The review includes an examination of relevant data in the loan documents to asses compliance with certain aspects of consumer protection laws relating to mortgage lending, including Truth in Lending Act [16 USC Sec.1601] ("TILA"), Home Ownership Equity Protection Act [12 CFR Sec. 226.32 et seq.] ("HOEPA"), State specific financial codes, the Real Estate Settlement Procedures Act [12 USC Sec. 2601] ("RESPA"), and to the extent applicable, violations of other state and federal laws discussed below.

The review required that Real Recourse Solutions make reasonable assumptions respecting certain loan terms that, if erroneous, may result in material differences between our findings and the loan's actual compliance with applicable regulatory requirements. While Real Recourse Solutions believes that its assumptions provide a reasonable basis for the review results, we make no representations or warranties respecting the appropriateness of Real Recourse Solutions' assumptions, the completeness of the information considered or the accuracy of our findings.

Our responsibility is to provide a report on the data in the mortgage loan documents provided based on our manual review and to provide the report to you and for no other purpose. We do not, in providing this report, accept or assume responsibility for any other purpose.

Sincerely,

Real Recourse Solutions

Forensic Loan Audit

## Brief Description of Forensic Report Sections

The Forensic Loan Audit Report is broken up into several areas detailing information on that particular topic. The following is an explanation of how this report is divided into different topics:

**Summary Findings**

Various tests and/or disclosures that were evaluated and audit findings, the applicable law and the result of individual test or disclosure analysis.

**Documents Received for Audit**

Inventory and details of documents received from or on behalf of the borrower, including whether or not documents were executed.

**Loan Summary**

Summary of the loan's attributes, terms, loan participants, originator's total compensation received and borrower's qualification profile.

**TILA Analysis**

Variance between the disclosed and correctly calculated amounts for the APR, Finance Charge, Amount Financed and Total of Payments. Compares and contrasts the information disclosed to the borrower versus the actual information that should have been disclosed as mandated by Federal and State regulations.

**Auditor Comments**

Details relevant case law for violations uncovered. Also, offers observations made by the auditor that may or may not be considered violations but may be a material factor in demonstrating improper business practices.

**Summary of Consumer Protection Statutes**

Reference guide to regulations and statutes covered in the report.

**Attachments**

Any relevant attachments pertaining to the particular loan file that may elaborate on a topic covered in the report.

**Forensic Loan Audit**

## Loan Summary

| Borrower: | Steve and Yun-Jin Hoffman |
|---|---|
| Property Address: | 7118 Intrepid Ln  Gaithersburg, MD 20879 |

| | | | |
|---|---|---|---|
| Closed Date: | 04/25/2005 | Loan Number: | REDACTED |
| Original Lender: | Chase | Loan Type: | CONVENTIONAL |
| Mortgage Broker: | | Loan Term: | 5/1 ARM |
| Escrow/Title Company: | Presidential Title | Income Documentation: | Unknown |
| Current Servicer: | N/A | Loan Purpose: | Purchase |

| | | | |
|---|---|---|---|
| Principal Loan Amount: | $450,000.00 | Mortgage Payment: | $2,484.92 |
| Appraised Value: | Unknown | Real Estate Taxes: | $427.63 |
| Purchase Price: | N/A | Flood/Hazard Insurance: | $50.34 |
| Loan To Value: | | HOA Dues: | N/A |
| Term: | 5/1 ARM 30YR | Mortgage Insurance: | N/A |
| Interest Rate: | 5.25% | Total PITI Payment: | $2,962.89 |

Forensic Loan Audit

## Truth in Lending (TIL) Disclosure Analysis

### Initial TIL Disclosure: WAS NOT AVAILABLE FOR REVIEW

| APR | Finance Charge | Amount Financed | Total of Payments |
|---|---|---|---|
| N/A | N/A | N/A | N/A |

### Final TIL Disclosure:

| Finance Charge | Amount Financed | Total of Payments |
|---|---|---|
| $491,912.61 | $449,224.54 | $941,137.15 |

### Auditor's Analysis on correct Calculation of TIL Disclosure:

| Finance Charge | Amount Financed | Total of Payments |
|---|---|---|
| $419,801.60 | $449,113.54 | $941,137.15 |

### Variance between Final Truth in Lending Disclosure & Auditor's Correct Calculation:

| | Finance Charge | Amount Financed | Total of Payments |
|---|---|---|---|
| Disclosed: | $491,912.61 | $449,224.54 | $941,137.15 |
| Calculated: | $419,801.60 | $449,113.54 | $941,137.15 |
| Variance: | -111.00 | -111.00 | 0 |
| Result: | FAIL | FAIL | N/A |

| FAIL | Accurate TILA disclosure statement provided 12 C.F.R § 226.17,18 |
|---|---|
| PASS | Prepayment Penalty disclosed 12 C.F.R § 226.18(k) |
| FAIL | CHARM booklet for variable rate mortgages 12 C.F.R § 226.19(b) |
| N/A | Interest only payment feature adequately disclosed 12 C.F.R § 226.17,18 |
| PASS | Itemization of amount financed 12 C.F.R § 226.18(c) |
| FAIL | Notice of Right to Cancel (2 copies per interested party and filled out correctly) 12 C.F.R § 226.23(b) |

**Forensic Loan Audit**

## Summary Findings:

**TILA Analysis:**

The Truth in Lending Act (TILA) is designed to provide consumers with accurate information about loan transactions in order to facilitate informed use of credit. TILA requires a creditor to disclose certain important information about the credit terms within set timelines to the consumer in writing prior to consummation of a credit transaction.   Thus, the Lender's failure to provide the borrower with accurate and timely disclosures of the Truth in Lending Act, places the borrower at a significant disadvantage as to the true cost and Adjustable rate feature of the credit being extended to them.

Based on my review of the loan documents provided to the borrower prior to the consummation of the above referenced loan, I have discovered the following violations of the Truth in Lending Act.

1. The Lender understated the finance charges in the Truth in Lending Act (Hereinafter "TILA") disclosure statement by $111.00 which exceeds the $35.00 accuracy tolerance under TILA 15 USC Section 1605, Regulation Z Sections 226.18(b) (d) & 226.23(h).  To calculate the accurate finance charge, an auditor is required to perform a thorough analysis of the HUD-1 settlement statement and compare it to the TILA disclosure statement.  The analysis is required to calculate the accurate dollar figure for the prepaid finance charge as it pertains to the accuracy of the true cost of the loan.

   The TILA accuracy tolerance for a rescindable transaction that involves the borrower's principle dwelling is $35.00.

2. The lender failed to provide the borrower with the consumer handbook on adjustable rate mortgage (CHARM) at the time of application.  The Lender's failure to provide Borrower with Special Variable Rate Disclosure is a violation of TILA, Regulation Z Sections 226.19(b).  Placing a borrower in a mortgage transaction without advance

Forensic Loan Audit

disclosure of the true nature of an adjustable rate mortgage places the borrower at a significant disadvantage once the loan starts to adjust upwards.

3. Lender failed to provide each interested party to the transaction with 2 copies each of the Notice of Right to Cancel. Lenders' failure to provide each interested party with the correct number of the Notice of Right to Cancel is a violation of the Truth in Lending Act 15 USC section 1635. The file should have contained a total of 4 copies of the disclosure instead of 2 copies.

**RESPA Analysis:**

The express purpose of the Real Estate Settlement Procedures Act (RESPA) is to protect consumers from unnecessarily high settlement charges and certain abusive practices. It requires advance disclosure of settlement costs, designed to enable a borrower to make an informed decision as to whether the offered terms are reasonable and acceptable. RESPA requirements begin to play a role early in the home mortgage process. Estimates of each of the charges must be based upon the experience in the area in which the property is located.

Based on my review of the loan documents provided by the borrower I have found the following RESPA violations:

1. The lender failed to provide the borrower with an accurate Good Faith Estimate of closing costs within 3 business days from application. Lender's failure to provide the borrower with accurate disclosure of the closing costs is a violation of RESPA 12 USC sections 2603, 2604.

Forensic Loan Audit

## MORTGAGE FRAUD TYPES IN ALL STATES

| Fraud Type | 2008 | 2007 | 2006 | 2005 | 2004 |
|---|---|---|---|---|---|
| Application | 61% | 62% | 67% | 67% | 65% |
| Tax Return | 28% | 17% | 18% | 18% | 24% |
| Appraisal | 22% | 19% | 16% | 20% | 23% |
| Verification of Employment | 21% | 24% | 19% | 17% | 16% |
| Verification of Deposit | 15% | 12% | 11% | 10% | 12% |
| Escrow/Closing Documents | 10% | 12% | 11% | 11% | 11% |
| Credit Report | 4% | 9% | 14% | 11% | 9% |

## TOP TEN STATES AND THE MOST PREVALENT MORTGAGE FRAUD ISSUES WITHIN THEM

| | Application | Tax Return | Appraisal | Verification of Deposit | Verification of Employment | Escrow/Closing Docs | Credit Report |
|---|---|---|---|---|---|---|---|
| Rhode Island | 31% | 23% | 38% | 15% | 0% | 8% | 8% |
| Florida | 67% | 29% | 18% | 20% | 21% | 10% | 4% |
| Illinois | 66% | 30% | 16% | 26% | 13% | 15% | 6% |
| Georgia | 52% | 34% | 31% | 11% | 11% | 6% | 3% |
| Maryland | 54% | 42% | 22% | 26% | 14% | 16% | 2% |
| New York | 74% | 32% | 15% | 27% | 21% | 15% | 12% |
| Michigan | 67% | 22% | 27% | 18% | 11% | 18% | 9% |
| California | 56% | 26% | 14% | 37% | 14% | 7% | 3% |
| Missouri | 63% | 17% | 29% | 4% | 25% | 0% | 0% |
| Colorado | 63% | 25% | 38% | 8% | 17% | 4% | 0% |

Data source: Mortgage Asset Research Institute

Forensic Loan Audit

**Real Estate Settlement Procedures Act (RESPA) Chart**

| CLAIM | CITATIONS |
|-------|-----------|
| **Pre settlement** | |
| Duty to provide Good Faith Estimate, Information Booklet | Section 5 12 U.S.C § 2604, Reg. X § 3500.6-7 |
| Duty to Provide Servicing Statement | Section 6 12 U.S.C § 2605(a) Reg. X § 3500.21(b) |
| Duty to provide "Controlled Business Agreement" Notice | Section 8 12 U.S.C § 2607 Reg. X § 3500.15 |
| **Settlement** | |
| Duty to Provide HUD-1 Settlement Statement | Section 4 12 U.S.C § 2603 Reg. X § 3500.8 |
| Duty to Provide Initial Escrow Account Statement | Section 10 12 U.S.C § 2609(c)(1) Reg, X § 3500.17(g) |
| Prohibition Against Kickbacks, Fee Splitting and unearned Fees | Section 8 12 U.S.C § 2607 Reg. X § 3500.14(b) |
| Prohibition Against Requiring Purchase of Title Insurance from Particular Title Company | Section 9 12 U.S.C § 2608 Reg. X § 3500.16 |
| Prohibition Against Charging Fee for Preparing Escrow and HUD-1 Statements and TIL Disclosures | Section 12 12 U.S.C § 2610 Reg. X § 3500.12 |

Forensic Loan Audit

## Federal & State Regulation

### Finance Charge Tolerance

12 CFR Sec. 226.18(d) requires the disclosure of the finance charge amount. 12 CFR Sec. 226.18(d)(1) For purposes of mortgage loans (in a transaction secured by real property or a dwelling) the disclosed finance charge shall be treated as accurate if the amount disclosed as the finance charge is understated or overstated by no more than $100.00.

12 CFR Sec. 226.23(g) provides "Tolerances for accuracy.--

(1) One-half of 1 percent tolerance. Except as provided in paragraphs (g)(2) and (h)(2) of this section, the finance charge and other disclosures affected by the finance charge (such as the amount financed and the annual percentage rate) shall be considered accurate for purposes of this section if the disclosed finance charge:  (i)  is understated by no more than 1/2 of 1 percent of the face amount of the note or $100, whichever is greater; or  (ii)  is greater than the amount required to be disclosed.

(2) One percent tolerance. In a refinancing of a residential mortgage transaction with a new creditor (other than a transaction covered by Sec. 226.32), if there is no new advance and no consolidation of existing loans, the finance charge and other disclosures affected by the finance charge (such as the amount financed and the annual percentage rate) shall be considered accurate for purposes of this section if the disclosed finance charge: (i) is understated by no more than 1 percent of the face amount of the note or $100, whichever is greater; or (ii) is greater than the amount required to be disclosed."

### Annual Percentage Rate Tolerance (APR)

An APR deviation is a material violation permitting the right of rescission if (a) it was a refinance, (b) within 3 years of the settlement date, and (c) outside the tolerances set below:

12 CFR Sec. 226.22(a)(2).  As a general rule, the APR shall be considered accurate if it is not more that 1/8 of 1 percentage point above or below the APR determined in accordance with the paragraph (a)(1) of this section.  Under 12 CFR Sec. 226.22(a)(3) in an irregular transaction (i.e. Adjustable rate mortgage), the APR shall be considered accurate if it is not more than ¼ of 1 percentage point above or below the APR determined in accordance with paragraph (a)(1) of this section.

15 U.S.C. Sec.1635(i) also provides Rescission Rights In Foreclosure, for the purposes of exercising any rescission rights after the initiation of any judicial or nonjudicial foreclosure process on the principal dwelling of the obligor securing an extension of credit, the disclosure of the finance charge and other disclosures affected by any finance charge shall be treated as being accurate for purposes of this section if the amount disclosed as the finance charge does not vary from the actual finance charge by more than $35 or is greater than the amount required to be disclosed under this title.

Forensic Loan Audit

## Federal & State Regulations

### Accuracy Tolerances (Closed-End Credit) [Sections 226.18(d) & 226.23(h)]

Regulation Z provides finance charge tolerances for legal accuracy that should not be confused with those provided in the TILA for reimbursement under regulatory agency orders. As with disclosed APRs, if a disclosed finance charge were legally accurate, it would not be subject to reimbursement. Tolerances for the finance charge in a closed-end transaction, other than a mortgage loan, are generally $5 if the amount financed is less than or equal to $1,000 and $10 if the amount financed exceeds $1,000.

The finance charge in a closed-end mortgage transaction consummated on or after September 30, 1995 is considered accurate:

If the disclosed finance charge does not vary from the actual finance charge by more than $100, or If the disclosed finance charge is greater than the actual finance charge.

Tolerances for the finance charge in rescindable mortgage transactions are different. After the three-business-day rescission period is over, the finance charge in the closed-end credit transaction is considered accurate if:

Except as otherwise provided, the disclosed finance charge does not vary from the actual finance charge by more than one-half of 1 percent of the credit extended or $100, whichever is greater.   The disclosed finance charge does not vary from the actual finance charge by more than 1 percent of the credit extended or $100, whichever is greater, for the initial and subsequent refinancing of residential mortgage transactions when the new loan is made by a different financial institution. (This does not apply to high cost mortgage loans subject to section 226.32, transactions in which there are new advances and new consolidations.)

Special rules apply to the finance charge tolerances if the (closed-end credit) rescindable mortgage transaction is involved in foreclosure action.

The disclosed finance charge is considered accurate if it does not vary from the actual finance charge by more than $35. Overstatements are not considered violations. The consumer can rescind if a mortgage broker fee that should have been included in the finance charge was not included.

Forensic Loan Audit

## Federal & State Regulations

### Truth in Lending Act

Sec. 226.19 Certain mortgage and variable-rate transactions.

(a)Mortgage transactions subject to RESPA--(1)(i) Time of disclosures. In a mortgage transaction subject to the Real Estate Settlement Procedures Act (12 USC 2601 et seq.) that is secured by the consumer's dwelling, other than a home equity line of credit subject to Sec. 226.5b or mortgage transaction subject to paragraph (a)(5) of this section, the creditor shall make good faith estimates of the disclosures required by Sec. 226.18 and shall deliver or place them in the mail not later than the third business day after the creditor receives the consumer's written application.

(ii) Imposition of fees. Except as provided in paragraph (a)(1)(iii) of this section, neither a creditor nor any other person may impose a fee on a consumer in connection with the consumer's application for a mortgage transaction subject to paragraph (a)(1)(i) of this section before the consumer has received the disclosures required by paragraph (a)(1)(i) of this section. If the disclosures are mailed to the consumer, the consumer is considered to have received them three business days after they are mailed.

(iii) Exception to fee restriction. A creditor or other person may impose a fee for obtaining the consumer's credit history before the consumer has received the disclosures required by paragraph (a)(1)(i) of this section, provided the fee if bona fide and reasonable in amount.

(2) Waiting periods for early disclosures and corrected disclosures. (i) The creditor shall deliver or place in the mail the good faith estimates required by paragraph (a)(1)(i) of this section not later than the seventh business day before consummation of the transaction.

(ii) If the annual percentage rate disclosed under paragraph (a)(1)(i) of this section becomes inaccurate, as defined in Sec. 226.22, the creditor shall provide corrected disclosures with all changed terms. The consumer must receive the corrected disclosures no later than three business days before consummation. If the corrected disclosures are mailed to the consumer or delivered to the consumer by means other than delivery in person, the consumer is deemed to have received the corrected disclosures three business days after they are mailed or delivered.

### Notice of Right to Cancel

The lender's disclosed "Right to Cancel Expire Date" (20060113) is earlier than the calculated "Right to Cancel Expire Date" (20060118). Under Reg Z, funds may not be disbursed to the borrower until the expiration of the rescission period. (Reg Z, 12 CFR Sec. 226.23(c); 12 CFR Sec.226.15(c); and the Official Staff Commentary to Reg Z)

According to Regulation Z, 12 CFR Sec. 226.23(a)(3), for closed-end loans, the consumer may exercise the right to rescind until midnight of the third business day.  Midnight of the Third Business Day.  "For purposes of rescission under 12 CFR Sec. 226.15 and 226.23, the term 'business day' means all calendar days except Sundays and the legal public holidays specified in 5 U.S.C. 6103(a), such as New Year's Day, the birthday of Martin Luther King, Jr., Washington's Birthday, Memorial Day, Independence Day, Labor Day, Columbus Day, Veterans Day, Thanksgiving Day, and Christmas Day." 12 CFR Sec. 226.2(a)(6).

Forensic Loan Audit

## Federal & State Regulations

### TILA and RESPA

Mortgage lending activities are generally subject to the disclosure requirements and substantive protections of the Truth in Lending Act (TILA) and RESPA. Under TILA, the failure to provide timely and accurate disclosures of the cost of mortgage credit may result in mandatory administrative reimbursement of excess finance charges; statutory damages and other civil liability; and the borrower's right to rescind the entire transaction. TILA provides that actions generally may be brought against assignees if the violation for which the action is brought is apparent on the face of the disclosure statement. Thus, for example, if a mortgage broker prepares a TILA disclosure statement on behalf of a national bank, and that disclosure understates the finance charge (for example, by failing to reflect the broker's fee accurately), the bank would be subject to a restitution order, civil liability, and potential rescission of the loan. Violating RESPA's ban on kickbacks and certain other types of payments and charges would expose the bank to extensive civil liability (three times the amount of the charge for the settlement service in question) and criminal sanctions. Thus, if a broker engages in fee-splitting or gives or accepts referral fees in violation of these provisions, and is found to be acting as agent for or in conjunction with a national bank, the bank may be subject to these legal risks.

### Predatory Lending Practices

The terms "abusive lending" or "predatory lending" are most frequently defined by reference to a variety of lending practices. Although it is generally necessary to consider the totality of the circumstances to assess whether a loan is predatory, a fundamental characteristic of predatory lending is the aggressive marketing of credit to prospective borrowers who simply cannot afford the credit on the terms being offered. Typically, such credit is underwritten predominantly on the basis of the liquidation value of the collateral, without regard to the borrower's ability to service and repay the loan according to its terms absent resorting to that collateral. This abusive practice leads to "equity stripping." When a loan has been made based on the foreclosure value of the collateral, rather than on a determination that the borrower has the capacity to make the scheduled payments under the terms of the loan, based on the borrower's current and expected income, current obligations, employment status, and other relevant financial resources, the lender is effectively counting on its ability to seize the borrower's equity in the collateral to satisfy the obligation and to recover the typically high fees associated with such credit. Not surprisingly, such credits experience foreclosure rates higher than the norm.

### HOEPA (Section 32)

High-cost mortgage loans originated through brokers or by third-party lenders must comply with the substantive protections and disclosure requirements set forth in the Home Ownership and Equity Protection Act (HOEPA). Among other things, HOEPA prohibits creditors from engaging in a pattern or practice of making certain high-cost loans based on the homeowner's equity without regard to repayment ability. HOEPA's substantive protections also restrict many of the other loan terms and structures often cited in discussions of predatory lending practices, including refinancing that may constitute loan flipping; payments to home improvement contractors; balloon payments; prepayment penalties; and negative amortization. Civil liability for HOEPA violations may include restitution of all the finance charges and fees paid by the consumer. HOEPA provides that assignees are subject to all claims and defenses that could be brought against the original creditor, unless the assignee can demonstrate "that a reasonable person exercising ordinary due diligence, could not determine, based on the documentation required by [TILA], the itemization of the amount financed, and other disclosure of disbursements," that the mortgage was covered by HOEPA.

Forensic Loan Audit

## Federal & State Regulations

### Fair Lending Laws

Predatory lending practices also can raise fair lending concerns. Predatory lenders often target identifiable groups of consumers that are (or are perceived to be) less financially sophisticated, currently have less access to mainstream lenders, or are otherwise vulnerable to abusive practices. If this targeting is based on age, race, national origin, gender, or other prohibited bases under the law, the abusive practices may represent violations of the Equal Credit Opportunity Act (ECOA) or the Fair Housing Act. Even if such targeting has been performed directly by a mortgage broker in soliciting applications, the creditor making the loan could nevertheless be subjected to civil lawsuits and government enforcement actions. ECOA also provides for successor liability by defining the term "creditor" to include "any assignee of an original creditor who participates in the decision to extend, renew, or continue credit."

### FTC Act

Predatory loans may involve violations of the Federal Trade Commission Act (FTC Act), which makes unlawful "unfair or deceptive acts or practices." Practices involving fraud, misleading conduct, or material omissions of information concerning costs, risks, or other terms and conditions may violate the prohibition against deception. Under relevant precedents, this prohibition is violated by representations, omissions, acts, or practices that are material and are likely to mislead a reasonable consumer in the audience targeted by the advertisement or other practice. Loans with unconscionable terms may also involve violations of the prohibition against unfair acts or practices. Evidence of practices such as loan flipping, equity stripping, or the refinancing of loans made under governmental or nonprofit programs with terms favorable to the borrower may be indicative of unfair or deceptive practices that violate the FTC Act. Violations of the FTC Act would subject a national bank or its operating subsidiary to supervisory action by the OCC

Forensic Loan Audit

## Federal & State Regulations

### Establishment of Policies and Procedures

**Underwriting policies based on the guidance letter from the Office of Comptroller of the Currency:**

When a loan has been made based on the foreclosure value of the collateral rather than on a determination that the borrower has the capacity to service and repay the loan without resort to the collateral, the lender is effectively counting on its ability to seize the borrower's collateral and use the borrower's equity in the collateral to satisfy the obligation, and is thus engaging in an unsafe and unsound banking practice.

National banks are advised to adopt policies and procedures to ensure that an appropriate determination has been made that the borrower has the capacity to make scheduled payments to service and repay the loan, including principal, interest, insurance, and taxes, based on a consideration of the borrower's:

•Current and expected income;
•Other relevant financial resources;
•Employment status; and
•Financial obligations, including other indebtedness.
Such policies also should address debt-to-income and loan-to-value ratios, as necessary to mitigate the risk of lending without regard to ability to repay.

Policies addressing risk of abusive practices:

National banks should also consider articulating clear policies and procedures to specify, if applicable, whether and under what circumstances the bank will make loans involving features or circumstances that have been associated with abusive lending practices, including the following:

•Frequent, sequential refinancing;
•Refinancing of special subsidized mortgages that contain terms favorable to the borrower;
•Single-premium credit life insurance or similar products;
•Negative amortization;
•Balloon payments in short-term transactions;
•Prepayment penalties that are not limited to the early years of a loan;
•Financing points, fees, penalties, and other charges;
•Interest rate increases upon default;
•Mandatory arbitration clauses; and
•Making loans subject to HOEPA.

Forensic Loan Audit

## Federal & State Regulations

### Florida Fair Lending Act

**To combat predatory lending, the Florida Fair Lending Act, effective October 2, 2002, prohibits predatory tactics on high cost home loans, including:**

•Charging prepayment penalties for longer than three years
•Increased interest on loans going into default
•Balloon payments on loans that mature in less than 10 years
•Extending credit regardless of a borrower's ability to pay
•Making direct payments to home improvement contractors
•Calling a loan due even though the borrower has complied with the terms of the loan
•Refinancing a loan during the first 18 months, unless there is a benefit to the borrower
•Offering to originate a loan at the borrower's home without a prearranged appointment
•Charging late fees that exceed 5 percent of the payment

**The new law also requires lenders to disclose certain facts about the loan at least three days prior to closing the deal, including:**

•A mortgage will be placed on the borrower's home, and they could lose the home in the event of foreclosure.
•Interest rates and terms can vary, depending on the lender or broker.
•Borrowers should consider consulting a HUD approved credit counseling agency or a financial advisor regarding financing of their home.
•Debt consolidation can be a useful tool if the borrower does not take on additional short-term debts.
•Loan applicants do not have to accept the loan, even though they have filled out an application.
•Changes in loan terms will require another three-day disclosure period.

**Forensic Loan Audit**